CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v.

NATIONAL FIRE INSURANCE COMPANY.

Opinion delivered December 24, 1921.

RAILROADS—FIRES.—In the absence of direct and positive testimony as to the origin of a fire which consumed inflammable property situated near a railroad track soon after the passing of a locomotive, the inference may be drawn that the fire originated from sparks from such locomotive, and it is not essential that the evidence should exclude all possibility of another origin; it being sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause.

Appeal from Lonoke Circuit Court; *George W. Clark*, Judge; affirmed.

*Thos. S. Buzbee, H. T. Harrison,* for appellant.

The evidence was not sufficient to support the verdict. Evidence which is reasonable and consistent cannot be arbitrarily disregarded by the jury. 151 S. W. 288; 96 Ark. 37.

*Trimble & Trimble* and *J. A. Watkins,* for appellee.

The evidence was amply sufficient to support the verdict. 77 Ark. 436.

McCulloch, C. J. This is an action against appellant railroad corporation to recover damages under the statute which makes such corporation liable for injury to property caused by fire communicated from a locomotive. Crawford & Moses' Digest, § 8569.

The claim is based on the destruction by fire of a hay barn situated near appellant's track in the town of Lonoke.

The only question raised on this appeal is as to the legal sufficiency of the evidence.

The building was constructed of galvanized iron—roof and walls—resting on a concrete foundation, and was situated about 90 feet from the north side of the track, several blocks west of the railroad station at Lonoke. It was filled with hay, and the door was closed. There were no openings except a space about five or six inches wide between the bottom of the door and the concrete floor, and there was a hole about the size of a man's fist, which had been punched through the iron siding by the tongue of a wagon. Loose hay was scattered in front of the door. The fire was discovered about 1 o'clock in the morning of September 23, 1917, a few minutes after the east-bound passenger train on appellant's road passed along. There is a conflict in the testimony as to whether or not the fire was discovered before the train passed. The engineer of the train and several other witnesses testified that they saw the fire as the train approached. There were other witnesses whose testimony tended to show that there was no fire about the barn until after the engine passed. This testimony is negative in form, but it warranted the finding that witnesses who passed along there immediately before the train approached did not see any

fire there, and that they would have seen the fire if it had been burning then, as stated by the engineer and other witnesses on the train.

There is more or less conflict on the other features of the testimony. For instance, some of the witnesses say that the wind was coming from the south, so that it would have carried the sparks from the engine over to the barn, while other witnesses testified that the wind was blowing toward the south, which would have prevented the sparks being carried from the engine to the barn.

The engineer and other witnesses testified that steam had been shut off, and that the engine was merely rolling down to the station, and that under these circumstances an engine never throws sparks. There is testimony, however, to the effect that there was a slight up-grade there, and that the engine must have been working steam at the time. The testimony tends to show that an engine will throw sparks when working steam. Appellant also adduced testimony that the engine had been inspected shortly before this fire occurred and was also inspected shortly afterwards and was found to be in good condition with respect to the appliances for preventing the escape of sparks.

There was a light plant and gin about 150 feet west of the barn, but there is no affirmative evidence that these were being operated at the time of fire. All the testimony on the subject is that a witness spoke of talking with the night fireman. However, we think it was a question for the jury to determine whether, under the circumstances, even if the gin plant was being operated, the fire was communicated from that source or from a passing railroad engine. We have laid down the rule and have adhered to it, that, in the absence of direct and positive testimony as to the origin of the fire which consumes inflammable property situated near a railroad track soon after the passing of a locomotive, the inference might be drawn that the fire originated from

sparks from the passing locomotive. *Railway Co.* v. *Dodd,* 59 Ark. 317. We have held that in order to be able to draw that inference it is not essential that the evidence should "exclude all possibility of another origin of the fire or that the evidence be undisputed, but it is sufficient, "if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause." *St. L. I. M. & S. Ry. Co.* v. *Dawson,* 77 Ark. 434. In the present case no witness testified that they saw sparks escaping from the engine, but the circumstances are shown to be such that a spark could have escaped, and the jury were warranted in finding that, since the fire was discovered immediately after the passing of an engine, it originated from that source. We are therefore of the opinion that there was evidence sufficient to support the verdict.

Judgment affirmed.