MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* WELLS.

4-6496                                    156 S. W. 2d 216

Opinion delivered December 1, 1941.

*Henry Donham* and *Pat Mehaffy,* for appellant.

*John H. Wright,* for appellee.

SMITH, J. On March 6, 1940, at approximately 1:10 p. m., appellee's barn and two of his outhouses were destroyed by fire. The contents of the building were also destroyed, including an International truck, a desk and two counters. Appellant railroad company was sued for the value of this property, upon the allegation that one of its trains had set out the fire which destroyed it. There was a verdict and judgment for the plaintiff in the sum of $400, from which is this appeal.

For the reversal of this judgment it is insisted that the evidence is insufficient to sustain it, as the verdict is contrary to the physical facts; that certain testimony was erroneously admitted, and that the verdict was excessive.

The evidence tending to sustain the verdict was to the following effect. The barn which housed the truck was the nearest of the buildings to the railroad track and was about 120 feet from the rails of the track. The fire was discovered about 15 or 20 minutes after a mixed local train of the appellant railroad company had passed the buildings. The wind was blowing from the southwest to the northeast, this being the direction of the buildings from the train. The case was tried upon the theory that a spark from the train had caused the fire.

A witness named Hazelwood testified that when he first saw the fire it was burning on the inside of the barn and out of the top on the east side, and the theory was advanced, without any competent testimony to support it, that children at play had started the fire.

Other witnesses, and there were several of them, testified that the fire started on the side of the barn nearest to the railroad track, and that the grass had burned over between the railroad track and the buildings. A witness, Frank Elia, testified that shortly after the train passed he saw grass on fire between the railroad track and the barn, and that a little later he saw the barn on fire. No plausible explanation of the fire was offered except that the train had started it.

In the case of *Missouri Pacific Rd. Co.* v. *Fowler*, 183 Ark. 86, 34 S. W. 2d 1071, it was said: "When fire is discovered shortly after a train has passed, and the proof does not establish some other origin of the fire, the jury is justified in finding that the fire originated from sparks from the engine. (Citing cases.)" The case of *Blanton* v. *Missouri Pacific Rd. Co.*, 182 Ark. 543, 31 S. W. 2d 947, cites other cases to the same effect.

Testimony was offered to the effect that appellant's engines, including the one here in question, were equipped with the most modern and approved spark arresters which would not permit the emission of sparks and that, even though a spark escaped, it would not survive long enough to start a fire. There was also testimony to the effect that the engine would not throw out sparks unless the throttle was open, and the engineer who operated the train here in question testified that he had "Cut it to a light throttle," but he did not testify that the throttle was entirely cut off.

A similar defense was interposed in the case of *Chicago, R. I. & P. Ry. Co.* v. *National Fire Insurance Co.*, 151 Ark. 218, 235 S. W. 1006, but it was there said that, when the engine was working steam, the question of fact was presented whether it would throw out sparks.

In opposition to the contention that engines equipped with spark arresters such as the engine in question had would not emit sparks, the plaintiff and two other witnesses were permitted to testify concerning other fires along the railroad right-of-way after the running of this and other trains. One of the witnesses was asked: "Q. . . . whether or not you observed any other fires along the right-of-way near your property soon after the running of this train at other times." Upon objection being made, the court inquired what the question was, and it was thus re-stated: "Q. I asked if he had observed other fires near his property right after the passing of this train. I am asking him about other occasions." The witness was permitted to answer that he had, over the objection and exception of the railroad company. This testimony was clearly competent as it related to "this train," the train in question.

Over the objection and exception of the railroad company, another witness was permitted to answer the same question. He answered: "I don't know that I have seen that, but I have seen some up and down the main-line." The answer was more comprehensive than the question, but the objection and exception appear to have been taken to the question, which was competent, rather than to the answer, which we think under the facts of this case was also competent.

The case of *St. Louis & San Francisco Ry. Co.* v. *Jones,* 59 Ark. 105, 26 S. W. 595, is cited and relied upon to sustain the contention that the questions and answers were incompetent. It was there said: "The evidence that other fires had occurred on the line of the railroad than the one which destroyed the plaintiff's meadow was improperly admitted, as it was not shown that these fires were caused by the engines of the railroad, or that they occurred from the operation of its trains. If this had been shown, it might have been admissible as a circumstance tending to show that the condition of the right-of-way of the railroad was such that a fire might have occurred from sparks escaping from its engines, and igniting the dry grass and inflammable material on its right-of-way. But the fact that other fires had occurred, without proof that they were caused by the railroad, was inadmissible. And it was inadmissible to show that other engines had set fire to materials on or near the right-of-way, as a circumstance to show that the engine which caused the fire on this occasion, or its appliances, were defective or in bad condition. For such purpose the proof would have to be confined to fires caused by the engine that is said to have caused the fire that burned the appellant's meadow."

The purport of the testimony last quoted was that the fires to which the witness referred were caused by the engines of the railroad company or that they occurred from the operation of its trains. The testimony was not admitted to show that other engines had set fires to materials on or near the right-of-way as a circumstance to show that the engine which caused the fire on this occasion, or its appliances, were defective or in bad condi-

tion. The testimony was competent, and was properly admitted, to refute the contention that none of the railroad company's engines would emit sparks.

Upon the question of the excessiveness of the verdict but little need be said. The testimony was to the effect that the buildings were of good material and in good condition. A carpenter of 15 years' experience estimated the replacement costs of the buildings as follows: Barn, $280; 1 outhouse, $30; 1 outhouse, $25. These items total $335, which is only $65 less than the verdict. Judgment for only $250 had been prayed on account of the barn; but the testimony shows the two counters were worth $10 each.

The dealer who sold the truck to appellee testified that its fair market value at the time of its sale was $1,342. It had only been driven 1,300 miles, and appellee had paid $575.86 of the purchase price. The vendor collected $1,050 insurance on the truck, and it is not clear how much of this was paid appellee for the value of his interest, but the sum paid him did not exceed $200. The jury was, therefore, warranted in finding that appellee sustained a loss in the destruction of the truck greater than the difference between the verdict and the value of the buildings.

No error appearing, the judgment must be affirmed, and it is so ordered.

MEHAFFY, J., not participating.