MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON,
TRUSTEE, *v.* CAMPBELL.

4-7209                                    177 S. W. 2d 174

Opinion delivered January 24, 1944.

658

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Kenneth C. Coffelt,* for appellee.

Holt, J. Appellee, Mrs. Dora Campbell, sued the appellants for damages resulting from the total destruction of her four-room residence, with its contents, at about 3 p. m., March 23, 1942. She alleged, in her complaint that her property was burned by reason of fire set out by appellants in the operation of trains over their right-of-way adjoining her property; that her damage amounted to $1,600; that she had received from the National Liberty Fire Insurance Company $500 insurance, and prayed damages against appellants in the amount of $1,100—the difference between her total damage and the money received from the insurance company. The insurance company intervened and alleged that it had paid Mrs. Campbell $500 on an insurance policy, covering the damage by the fire in question, and asked to be subrogated to the rights of Mrs. Campbell against appellants, in the sum of $500. Appellants, by answer to Mrs. Campbell's complaint, and in a response to the intervention of the insurance company, denied every material allegation alleged by appellees.

A jury awarded Mrs. Campbell $1,100, and the insurance company $500. Thereafter, on motion and over appellants' objections, the court allowed Mrs. Campbell's attorney a fee of $200 and the insurance company's attorney a fee of $100. This appeal followed.

For reversal, appellants first contend that the evidence was not sufficient to support the verdicts. We cannot agree. Briefly stated, the evidence, when viewed in the light most favorable to appellees, is to the following effect: Mrs. Campbell's residence was located on a four-acre tract adjoining the railroad's right-of-way, in Saline county. At about 2 p. m., March 23, 1942, a passenger train, with coal burning engine, going from Hot Springs to Memphis, passed the point of the fire and at about 2:25 p. m. of the same day, one of appellants' freight trains, with oil burning engine, passed Mrs. Campbell's residence, going toward Hot Springs. No one observed either of these trains throwing sparks. Appellants' right-of-way adjoining Mrs. Campbell's property was covered with sage grass. Shortly after the trains had passed, fire appeared burning the sage grass on appellants' right-of-way, and was being carried toward Mrs. Campbell's residence by the wind. The fire spread from the right-of-way, according to the testimony of witnesses, and ignited Mrs. Campbell's house, from the outside, totally destroying the house, with its contents. There had been no fire in the house since 6 o'clock of the morning before the fire, and there had been no fire under wash tubs or pots in the yard surrounding the house.

In *Cairo, Trumann & Southern Railroad Company* v. *Brooks, et al.,* 112 Ark. 298, 166 S. W. 167, this court said: "A statute of this State imposes liability upon railroad companies for damage on account of fire caused by the operation of trains, regardless of the negligence of the employees of the company (Act 141, April 2, 1907), and the constitutionality of that statute has been upheld. *St. Louis & S. F. Rd. Co.* v. *Shore,* 89 Ark. 418, 117 S. W. 515." And, in *Chicago, Rock Island & Pacific Ry. Co.* v. *National Fire Insurance Company,* 151 Ark. 218, 235 S. W. 1006, in discussing the sufficiency of the evidence, this court said: "We have laid down the rule and have adhered to it, that, in the absence of direct and positive testimony as to the origin of the fire which consumes inflammable property situated near a railroad track soon after the passing of a locomotive, the inference might be

drawn that the fire originated from sparks from the passing locomotive. *Railway Co.* v. *Dodd,* 59 Ark. 317, 27 S. W. 227. We have held that in order to be able to draw that inference it is not essential that the evidence should exclude all possibility of another origin of the fire or that the evidence be undisputed, but it is sufficient, 'if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause.' *St. L., I. M. & S. Ry. Co.* v. *Dawson,* 77 Ark. 434, 92 S. W. 27.''

In the instant case, appellants produced evidence that there was fire under a wash tub in Mrs. Campbell's yard near the house prior to and during the fire. However, the question as to the origin of the fire has been passed upon by the jury and in our opinion, the testimony is legally sufficient to support the jury's finding that the fire resulted from the operation of appellants' train. *Kansas City Southern Railway Company* v. *Cecil,* 171 Ark. 34, 283 S. W. 1.

It is next argued that the verdicts are excessive. We agree that the award of $1,100, in favor of Mrs. Campbell, is excessive. In arriving at the amount of damages to be awarded to Mrs. Campbell, the court correctly instructed the jury that the value of the property destroyed ''shall be based upon whatever you find to be a fair market value of the property in the community where it was situated at the time it was destroyed.'' Two witnesses, Mrs. Campbell and her son, Nathan, testified on the question of value. Mrs. Campbell testified that her four-room house cost $500 to build about seven years ago, and that the furnishings cost $600, or a total of $1,100. Her son, who helped build the house, testified that it cost $850 to build, was worth $850 at the time of the fire and, in his opinion, could not be rebuilt, ''if you could get the lumber,'' for less than $1,500. It appears, therefore, that the highest value placed upon the property by any witness, at the time of its destruction, was $1,450. We find no evidence in the record to warrant a total recovery therefore of more than $1,450. The award of $1,100, in favor of Mrs. Campbell, is excessive by $150, but this

error may be cured here, by reducing the award to her to $950.

In *Dodd & Co.* v. *Read,* 81 Ark. 13, 98 S. W. 703, a case involving the amount of damages for the destruction of a building by sparks from an engine, this court reduced the amount of the verdict from $300 to $200. It was said in that case: "Now, the true inquiry was as to the cash market value of the building, or rather the difference between the market value of the property before and after the destruction of the house; and the witnesses who undertook to state the value placed it at $200. It is manifest, however, that the jury disregarded this testimony, and based the amount of the verdict upon the cost of rebuilding the house anew, less the depreciation on account of age and decay. They either did this, or they arbitrarily rejected the opinions of the witnesses as to the value and substituted their own judgment. In either event they exceeded their powers and rendered a verdict inconsistent with the evidence." In cases of this kind, in determining the fair market value of the property in question, at the time it was destroyed, it is proper to permit evidence of replacement costs. However, as indicated, the highest estimate of the cash market value of the house in question at the time it was destroyed was placed at $850. *Bush, Receiver, St. Louis, Iron Mountain & Southern Railway Company,* v. *Taylor,* 130 Ark. 522, 197 S. W. 1172.

Appellants next complain "because the court erred in permitting plaintiff's attorney, Mr. Coffelt, on cross-examination of defendants' witness, E. J. Cook, to ask the witness whether or not the right-of-way had been set afire by a freight train throwing out sparks before and whether or not a trestle had caught afire about the same place and in permitting said witness to answer said question over the objection of the defendants."

There was testimony on the part of appellants to the effect that their engines, including those in question here, were equipped with the most modern and approved spark arresters, which could not permit the emission of sparks, and even though a spark should escape, it would

not survive long enough to start a fire. The testimony complained of is as follows: "Q. You testified that the train did not start it? A. Yes. Q. And that the wind was blowing toward the track. Couldn't the train have thrown out cinders? A. I don't think so. Q. All trains do throw out cinders, don't they? A. I don't think so. Sometimes people throw out cigars and matches. Q. Don't you know that the right-of-way catches afire by freight trains throwing out sparks? A. Yes. . . . Q. That not long ago a train caught a trestle afire about the same place? A. I don't know what set it."

We think this testimony was competent, and properly admitted, to refute appellants' contention that none of the railroad company's engines would emit sparks. A similar question was presented in the recent case of *Missouri Pacific Railroad Co., Thompson, Trustee, v. Wells*, 203 Ark. 227, 156 S. W. 2d 216, and in holding testimony, (in effect the same as that presented here) admissible, the court said: "The purport of the testimony last quoted was that the fires to which the witness referred were caused by the engines of the railroad company or that they occurred from the operation of its trains. The testimony was not admitted to show that other engines had set fires to materials on or near the right-of-way as a circumstance to show that the engine which caused the fire on this occasion, or its appliances, were defective or in bad condition. The testimony was competent, and was properly admitted, to refute the contention that none of the railroad company's engines would emit sparks."

Appellants next argue that the court erred in giving appellee's instruction No. 1. The court, in this instruction, after first outlining to the jury the allegations set out in Mrs. Campbell's complaint, continues: "You have now heard the evidence in this case, and if you believe and find from a preponderance of the evidence which you have heard throughout this trial that the plaintiff was the owner of the property described in the complaint, and that it was destroyed by fire as alleged, and if you further find that the defendants were negligent as alleged and that such negligence, if any, was the cause of said

fire and the resulting loss of property of the plaintiff as alleged, if any, and you further find that plaintiff herself was not negligent, etc.''

We think it obvious that this instruction was more favorable to appellants than was warranted under the statute, (§ 11147, Pope's Digest) and placed a greater burden on appellee, Mrs. Campbell, than she was required to bear. The instruction required the jury to find appellants guilty of negligence in setting out the fire. Section 11147, *supra,* fastens liability on the railroad company, regardless of its negligence, when property is destroyed by fire set out by the operation of its train. There is this provision in the statute: ''Upon the trial of any such action or suit for such damage it shall not be lawful for the defendant in such suit or action to plead or prove as a defense thereto that the fire which caused such injury was not the result of negligence or carelessness upon the part of such defendant, its employees, agents or servants; but in all such actions it shall only be necessary for the owner of such property so injured to prove that the fire which caused or resulted in the injury originated or was caused by the operation of such railroad, or resulted from the acts of the employees, agents or servants of such defendant.'' We think, therefore, that appellants are in no position to complain as to this instruction. *Cairo, T. & S. Rd. Co.* v. *Brooks, supra.*

There is criticism by appellants of other instructions given by the court. However, it suffices to say that we have carefully reviewed these instructions and are of the opinion that they correctly stated the law.

Finally, appellants urge that the court erred in awarding the attorneys' fees, for the reason that there was ''no prayer or allegation in the complaint requesting attorneys' fees.'' The statute, 11147, *supra,* provides for a reasonable attorney's fee in Mrs. Campbell's suit against appellants, the language of the statute in this regard being, ''if the plaintiff recover in such suit or action, he shall also recover a reasonable attorney's fee to be ascertained from the evidence in the case by the court or jury trying the same. Provided, that the penalty

prescribed by this section shall apply only when such employee, agent or servant is in the discharge of his duty as such. Act April 2, 1907, p. 336.''

In the instant case, there was no prayer in the complaint·for attorneys' fees. However, after the jury had returned its verdicts, a motion was filed by Mrs. Campbell's attorney, and also a motion by the attorney for the insurance company, asking that a reasonable attorney's fee be allowed to each. Thereupon, the court, as heretofore indicated, allowed Mrs. Campbell's attorney a fee of $200, and the attorney for the insurance company a fee of $100. We think the procedure followed by filing the motions was not only proper, but the better practice to be followed under the statute. This, we think, was the effect of the holding of this court in *Kansas City Southern Railway Company* v. *Cecil,* 171 Ark. 34, 283 S. W. 1. That was a suit based on the statute involved here, to recover damages growing out of the burning of certain property. A search of the record in that case discloses that there was no prayer in the complaint for attorneys' fees, but the procedure was by motion, as was in the instant case. In that case, this court said: ''The jury returned a verdict for appellee in the sum of $380, and, after this had been done, appellee filed a motion for the allowance of an attorney's fee, and upon hearing this motion the court fixed a fee for appellee's attorneys at $75, and judgment was rendered for the damages assessed by the jury and the attorney's fee assessed by the court,'' and at the close of the opinion, ''In other words, if the statute applies, and the railroad is liable thereunder (and we have concluded that this liability was alleged, and the jury has found that it was proved), the party damaged has the right, as an incident to a recovery under the statute, to recover also a reasonable attorney's fee, and it was therefore proper to render judgment for the attorney's fee as well as for the damage itself.''

We conclude, therefore, that the fee of $200 allowed to Mrs. Campbell's attorney was properly allowed and appears reasonable.

A different situation presents itself, however, as to the fee of $100, allowed to counsel for the insurance company. The suit here is not one on an insurance policy. The insurance had been paid. We know of no statutory authority for this fee. This part of the statute requires a strict construction, and when so construed not more than one attorney's fee may be allowed.

We conclude, therefore, that the judgment in favor of appellee, Mrs. Dora Campbell, should be reduced to $950, and as so modified, it is affirmed. That part of the judgment in favor of the National Liberty Fire Insurance Company awarding its attorney a fee of $100 is reversed and dismissed, and in all other respects the judgment is affirmed, (appellees to pay costs of this appeal).